' Bentley, J.
In the evening of the 7th of January, 1891, between 6:30 and 7 o’clock, in the midst of a snow-squall, a freight train of *174 upwards of 40 cars, headed east, stopped on the east-bound main track of the L. S. & M. S. R. R., about half a mile east of Air Line Junction station, in order to switch certain cars then at the head or east end of the train, on to a side track in the company’s yards at that point. The freight train was in charge of a conductor, and had a head brakeman and a rear brakeman. The place and track where the freight train stood was one where trains of vaidous kinds, as well as switching engines, were frequently passing, and likely at almost any time of the day. or night to be passing; the said east-bound main track and the west-bound main track beside it constituting, at that point, as one witness says, “the throat of the immense business of the Lake Shore road.” Said train had been standing for about 15 minutes, when engine No. 17, backing east along said track, with only its tender attached, ran into the rear of the freight train, the gondola car shoving the tank on said tender into the engine cab and against the boiler-head, crushing and killing the said Sawyer, the plaintiff’s decedent, and another man, and injuring some others. The rules of the company then provided as follows :
“ Conductors will have charge of trains. * * * Conductors will be held responsible for the safe management of their trains and for the performance of duty on the part of the men engaged with them while upon the road. They must know that their trains are at all times provided with everything necessary to enable them to comply with the regulations of the road.
“When any train is behind time or delayed ata station, or upon the road, long enough to be in danger of being overtaken or met by another train, the conductor must have signals posted at proper distances (not less than 800 yards), in each direction, to prevent the possibility of a collision. The proper signals to indicate danger are a red flag by day or a red light by night, in connection with one torpedo placed on the track by day or night, at least 800 yards (16 telegraph poles) distance in each direction of the road, and in such a position that the flag or light may be seen at least one mile before reaching the place of danger. When the conductor is absent on another part of the train, or fails properly to attend to his duties by ordering the rear brakeman to protect *175 the rear end of the train, the rear brakeman must go back with the proper signals and protect his train, whether such order has been received or not. He will be held equally responsible with the conductor for the safety and protection of the train.
" When within the limits of the various yards, all trains must be run with great care, and under the control of the engine-man, so that hé may at all times be able to stop within the range of his vision. Whenever the track is obstructed within the yard limits, yard and trainmen must do all that can possibly be done to protect trains, and every man will be held strictly accountable for the manner in which this duty is performed.
“ At night, or in foggy or stormy weather, or at places where signals can not be seen for at least one mile, the flagman will place one torpedo on the rail, at a distance of at least 16 telegraph poles from the train ; he will then go a distance of eight more telegraph poles from the train, and place another torpedo upon the rail, and remain there until recalled by the whistle of his engine ; but if a passenger train is due, he must remain until it arrives.
“ The rear end of every train and of every engine alone, running upon the road, must always display a red light at night. The rear car of all freight trains must always display a green flag during the day.
“The Toledo yard extends from the Bicycle Company’s switch on the Detroit division, and the west switches of Air Line Junction yards to the slow-board 2,000 feet east of the switch at Rockwell Junction. Engines and trains within the limits of the yards must proceed with caution and under such control as to be able to stop within the limits of vision. All trains within these limits will be subject to the orders of the general yardmaster and his assistants, and must proceed with care, expecting that of other trains immediately in advance of them. Any delayed train must protect itself instantly by the proper signals.”
The evidence showed that neither the rear brakeman or any person went back upon the track to flag approaching trains or engines, nor were any signals by way of torpedoes placed upon the track, or otherwise given. The'evidence of the plaintiff tends to show that there were no lights on the rear of the freight train, and that on account of the darkness and the *176 snow, no one upon engine 17 saw the rear of the freight train or knew that there was any obstruction until a moment or two before the collision and too late to prevent it, and that the rear brakeman was then upon the rear car,; and the evidence for the defendant tended to show that a red lantern was hanging at the side of said gondola car within about a foot of the rear end, and that said brakeman had "a lantern showing a white light on his arm. The evidence on behalf of the plaintiff tended to show that there was no light of any kind at the rear of said freight train, and that the person upon the engine, though looking ahead, saw no such light. The evidence also shows that said conductor, though within sight of the rear of his train and where he could have seen the brakeman going back with a light, if he had in fact gone, did not order the rear brakeman back, nor attempt to notice whether he had so gone or not, but attending to said switching, relied entirely upon the rear brakeman’s observing the rules of the company for the protection of said train.
E. D. Potter, Jr., for plaintiff in error.
J. K. Hamilton, for defendant in error.
The evidence also shows that an assistant yardmaster of the company, who had just quit his work for the day, in said yards, came down said track from the west shortly before the collision, and climbed on to said gondola car for the purpose of going home, and saw the rear brakeman there with the white light, but gave him no directions. Said engine was a switch engine employed in said yards, and the plaintiff’s decedent was a switchman or helper and a part of its crew, working daytimes in said yards, and his work for the day being over, and said engine going eastward towards his home, he and other members of the crew, as had long been the custom, were riding upon it for the purpose of being taken nearer their home. Said freight train was not provided with any torpedoes, such as are specified in said rules.
The jury having rendered a verdict in favor of the plaintiff below for «16,750.00, we hold that said verdict was warranted by the proofs. Judgment affirmed.